| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------- X<br>                                                               :<br>KEVIN HARRIS,                          :<br>                                    Plaintiff,     :<br>                                                                :<br>                      -against-                          :<br>                                                             :<br>THE CITY OF NEW YORK, et al.,            :<br>                                           Defendants.   :<br>------------------------------------------------------------- X | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #:_____<br>DATE FILED: 02/03/2016<br><br>13 Civ. 7788 (LGS)<br><br><u>ORDER</u> |

LORNA G. SCHOFIELD, District Judge:

Pro se Plaintiff Kevin Harris brings this action against Defendants the City of New York, Police Officer Joan Ferreira, Police Officer Angel Lujan, and Retired Police Officer Bryan Zampella pursuant to 42 U.S.C. § 1983. Plaintiff seeks money damages on his claims of false arrest and malicious prosecution. Defendants move for summary judgment. Their motion is granted.

### I. BACKGROUND

The following facts are drawn from the parties' submissions on this motion, and all inferences are drawn, as required, in favor of Plaintiff as the non-moving party.[1]

**1. The Two Arrests According to the Police**

Defendant Ferreira submitted an affidavit stating that on November 5, 2010, at around 11:30 PM he witnessed an altercation and observed Plaintiff chasing another individual while swinging a stick. The individual told Ferreira that he was walking with his cousin when a few men, including Plaintiff approached. One of the men in Plaintiff's group said "take his chain,"

---

[1] Plaintiff did not respond to Defendants' Rule 56.1 statement, which ordinarily would be construed as a concession. However, given Plaintiff's pro se status and the instruction that "the submissions of a *pro se* litigant must be construed liberally," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam), the failure to respond is excused. *See also Lloyd v. Holder*, No. 11 Civ. 3154, 2013 WL 6667531, at *5 (S.D.N.Y. Dec. 17, 2013) ("Courts in this Circuit typically forgive a *pro se* plaintiff's failure to file a Local Rule 56.1 Statement, and generally conduct their own independent review of the record.").

and began hitting him and his cousin.  He pushed the men off his cousin, and Plaintiff ran towards him with a stick and swung it a few times.  Officer Zampella, who was on duty with Ferreira, recovered a black stick with a metal tip that Plaintiff dropped as the officers approached.

Defendant Ferreira arrested Plaintiff on charges of Robbery in the Third Degree pursuant to New York Penal Law ("N.Y.P.L.") § 160.05, Attempted Assault with Intent to Cause Physical Injury pursuant to N.Y.P.L. § 120.00(01), and Menacing in the Third Degree pursuant to N.Y.P.L. § 120.15.

After his arrest, Plaintiff was transported to and placed in a cell at the police precinct where he was involved in a physical altercation on November 6, 2010.  Officer Ferreira stated in his affidavit, and the contemporaneous arrest report, that a detainee had told Ferreira that Plaintiff had punched him several times and, as a result, the detainee suffered injuries to his mouth and eye.  Ferreira arrested Plaintiff again and charged him with Assault with Intent to Cause Physical Injury under N.Y.P.L. § 120.00(01).

**2. Plaintiff's Video Interview**

On November 6, 2010, the day following Plaintiff's initial arrest, an Assistant District Attorney ("ADA") interviewed Plaintiff and recorded the interview by video.  In his video interview, Plaintiff states that he was staying in his sister's apartment, and had gone up to 116th Street to smoke and "chill."  On his way back to the apartment, he saw a group of people fighting.  One of them punched Plaintiff hard on the chin and knocked him to the ground.  Plaintiff got up and grabbed a nearby stick, a broken mop stick, and started chasing his assailant.  At that moment, the police arrived, and said to Plaintiff, "Stop, stop.  What are you doing?"  Plaintiff started to run, but then stopped and put up his hands and was arrested.  Plaintiff stated that before

the police arrived, he was chasing his assailant, who was fast, and "I never really got to catch him. And I swear to God . . . . If they [the police] wasn't there . . . . They saved him. I was on him, like almost there."

In the video, Plaintiff described the incident at the precinct. He said that three to four other guys he was with in a holding cell were kicking Plaintiff and stepping on him, and so Plaintiff asked the officer to move him out of the cell. The officer moved him to another cell where he slept for "two seconds." When he awoke, a deaf cellmate was stepping on Plaintiff. Plaintiff was ready to attack him to retaliate for being stepped on, but he kicked Plaintiff. The sergeant entered and asked what was going on. Plaintiff told him to remove the deaf inmate. The sergeant took umbrage at his comment, had the other inmate removed, kicked Plaintiff and said, "I gotta charge you with a felony."

Plaintiff awoke with a swollen hand and asked an officer to call the EMS. The officer replied that his hand was swollen from Plaintiff hitting the other man. Plaintiff vehemently disagreed and said that he did not assault his cell mate, that the sergeant was a liar, and that when he'd asked the sergeant to call the EMS, the sergeant had kicked him because he thought Plaintiff was unconscious, and then continued to kick him because he thought Plaintiff was faking being unable to move.

When asked if he had any injuries, Plaintiff said that his leg was swollen. On the video, Plaintiff showed his right shin bone which he said was bruised, that he couldn't walk straight, and that his left hand hurt and was swollen. It is unclear from the video whether he was bruised and swollen. At the end of his video interview, Plaintiff denied hitting his cellmate.

3

### 3. The Charges Against Plaintiff Are Dropped.

In January and February 2011, the criminal actions arising out of Plaintiff's November 5 and 6, 2010, arrests were dismissed because of the District Attorney's failure to prosecute the case.

### 4. The Complaint and Amended Complaint

Plaintiff filed a Complaint to commence this action in October 2013. He filed an Amended Complaint in May 2014. The factual recitation in the two Complaints is in substance the same and as follows, except where noted:

Plaintiff was returning home from the grocery store when he witnessed someone commit a violent assault. The same person then assaulted Plaintiff. Plaintiff began to run but was stopped by the police and arrested. He was handcuffed and placed in a police van for 30-60 minutes and then brought to the precinct. The original Complaint alleged that officer Ferreira and two unknown officers brought Plaintiff to the precinct. The Amended Complaint names all three officers.

Both Complaints allege that Plaintiff was assaulted by a fellow inmate in the first holding cell while he was sleeping. He got up to try and defend himself, but the officers came in and broke up the dispute. Plaintiff was then put in a second cell, asked to go to the hospital for back pain and fell asleep. When he awoke, the sergeant was stomping and kicking him in the back because the sergeant thought he was feigning sleep. (The original Complaint alleges that Plaintiff awoke to "them" stomping and kicking his back.) The EMS arrived and took him to the hospital, where he received an MRI. The doctor told him that his back pain was from a back spasm due to his injuries he sustained from the assaults in the precinct. The Amended Complaint also alleges

that the doctor told Plaintiff that he had hand and head injuries.  He was given 5 or 6 medications for his injuries.

### 3. The Deposition

At his deposition, Plaintiff testified that he went into a grocery store, and when he came out he saw a big group fighting.  One man who had a knife punched Plaintiff in the face.  Plaintiff "just took off and ran down towards the park to my sister building."  The police caught up with him and told him, "we are not going to arrest you, we are going to let you go, just let us figure out what [i]s going on."  One officer stayed with Plaintiff, who was placed in handcuffs in the minivan, and the other two officers left.  Upon their return about 30 to 40 minutes later, the officers formally arrested Plaintiff.

Plaintiff testified that he did not recall chasing anyone or holding a stick before he was arrested, but expressly said that he was not denying that he had done so.  When asked if his prior videotaped statement was true -- if he said that he was holding a stick at the time police officers approached him -- Plaintiff responded, "If I said it?  Yeah."  Plaintiff repeatedly said that he could not recall the answer to various questions, including this one about the stick, because "it was a long time ago."

Plaintiff testified that, at the precinct, he was physically assaulted by an older, black male.  Plaintiff tried to fight back, but the other inmate was bigger than Plaintiff.  Plaintiff conceded that the two of them wrestled and that the other male "probably had an injury from that, but I didn't get to physically hit him back."  Plaintiff did not remember whether the other man had any specific physical injuries, and conceded that when Plaintiff was removed from the cell, he did not have any visible physical injuries himself.

After the altercation, officers and the desk sergeant came into the cell.  Plaintiff told the desk sergeant that he needed medical attention, but the sergeant "really didn't even want to call EMS, he didn't want to get me any type of medical attention.  I really had to like let him know . . . I tried to lay down, like maybe feel better.  Then he came in, when the EMS came [20 to 30 minutes later], he was like, 'EMS is here' or whatever.  I'm like, 'I can't get up.' . . . Then he start stomping me out."  Plaintiff went on to explain that the sergeant stomped on his midsection, his stomach and back.

## II.     LEGAL STANDARD

The standard for summary judgment is well established.  Summary judgment is appropriate where the record before the Court shows that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Tolbert v. Smith,* 790 F.3d 427, 434.  "The moving party bears the burden of establishing the absence of any genuine issue of material fact."  *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citation omitted).  "In determining whether summary judgment is appropriate, [the court] must resolve all ambiguities and draw all reasonable inferences against the moving party."  *Tolbert*, 790 F.3d at 434.  Not every disputed factual issue is material in light of the substantive law that governs the case.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

However, the party opposing summary judgment must come forward with materials setting forth specific facts showing that there is a genuine issue of material fact; he cannot defeat summary judgment by relying on the allegations in the complaint, conclusory statements, or mere

assertions that affidavits supporting the motion are not credible.  *See Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).  Furthermore, a non-movant must produce more than "a scintilla of evidence" in support of his position.  *See Anderson*, 477 U.S. at 252.  Essentially, at the summary judgment stage, a nonmoving party "must offer some hard evidence that its version of the events is not wholly fanciful."  *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) (citations omitted).

Where, as here, a party appears pro se, a court must construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citations omitted) (collecting cases); *Smith v. Fischer*, 803 F.3d 124, 127 (2d Cir. 2015) (confirming *Triestman*'s approach to pro se litigants).  Pro se status does not, however, "relieve [a non-movant] of his duty to meet the requirements necessary to defeat a motion for summary judgment."  *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal citation and quotation marks omitted).  "Bald assertions by a pro se litigant, completely unsupported by evidence, are not sufficient to overcome a motion for summary judgment."  *Daniel v. T & M Prot. Res. LLC*, 87 F. Supp. 3d 621, 630 (S.D.N.Y. 2015), *appeal dismissed* (Apr. 30, 2015), *reconsideration denied*, No. 13 Civ. 4384, 2015 WL 783349 (S.D.N.Y. Feb. 24, 2015) (internal citation, alterations, and quotation mark omitted).

### III. DISCUSSION

#### A. Statute of Limitations

Defendants Lujan and Zampella were part of the team that arrested Plaintiff on November 5, 2010.  The claims against them are the false arrest claim, and perhaps the malicious

prosecution claim, although only Defendant Ferreira is listed on the criminal complaint that lead to the prosecution. The claims against Lujan and Zampella are time barred. Section 1983 actions filed in New York are "subject to a three-year statute of limitations," *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013), which begins to accrue "when the plaintiff knows or has reason to know of the harm." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)).

The statute of limitations required the filing of claims against Lujan and Zampella by November 5, 2013. Although Plaintiff commenced this action on October 31, 2013, the original complaint did not name Lujan or Zampella as Defendants. They were added more than six months later in the First Amended Complaint, filed on May 5, 2014, replacing the John Doe defendants. Accordingly, Plaintiff's claims against these Defendants are timely only if the First Amended Complaint relates back to the original complaint.

The Complaint does not relate back under Rule 15(c). Two provisions in Rule 15(c) are applicable. Under Rule 15(c)(1)(C), an amended pleading that "changes the party or the naming of the party against whom a claim is asserted" relates back to the date of the original pleading if the claim asserted against that party arises out of the same "conduct, transaction, or occurrence" and if, within the time limit for service, the new party "(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C).

The last element -- whether Defendants knew or should have known that the action would have been brought against them but for a mistake -- is not met. Plaintiff did not identify Lujan or

Zampella by name in the original complaint because he appears not to have known their identities.  Under controlling Second Circuit precedent, "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities."  *Sewell v. Bernardin*, 795 F.3d 337, 342 (2d Cir. 2015) (quoting *Barrow v. Wethersfield Police Dep't.*, 66 F.3d 466, 470 (2d Cir. 1995)); *accord Hogan v. Fischer*, 738 F.3d 509, 517-518 (2d Cir. 2013).  Accordingly, the claims against Lujan and Zampella do not relate back under Rule 15(c)(1)(C).

Alternatively, under Rule 15(c)(1)(A), an amendment to a pleading relates back to the original pleading when "the law that provides the applicable statute of limitations allows relation back."  Fed. R. Civ. P. 15(c)(1)(A).  In applying Rule 15(c)(1)(A), courts "look to the entire *body* of limitations law that provides the applicable statute of limitations."  *Hogan*, 738 F.3d at 518.  For § 1983 claims, courts look to applicable state law, which in this case is § 1024 of New York Civil Practice Law and Rules.  *Id.* at 517-518.  Under § 1024, a plaintiff may substitute a named party for a Doe party *nunc pro tunc* if the plaintiff: (1) "exercise[s] due diligence, prior to the running of the statute of limitations, to identify the defendant by name"; and (2) "describe[s] the John Doe party 'in such form as will fairly apprise the party that [he] is the intended defendant.'"  *Id.* at 519 (third alteration in original) (quoting *Bumpus v. N.Y.C. Transit Auth.*, 883 N.Y.S.2d 99, 104 (App. Div. 2d Dep't 2009)).  Where, as here, nothing in the record indicates that Plaintiff exercised due diligence before the statute of limitations expired, he may not use the "John Doe" procedure in § 1024.  *See Temple v. New York Cmty. Hosp.*, 933 N.Y.S.2d 321, 322 (App. Div. 2d Dep't 2011) ("To make use of the 'John Doe' procedure delineated in CPLR 1024, parties must demonstrate that they have exercised due diligence prior to the running of the statute of

9

limitations . . . ." (internal quotation marks omitted)).  Therefore, the claims against Lujan and Zampella are time barred.

Plaintiff argues that the claims against these two Defendants are not time barred because the mistake requirement under New York's general relation back statute, CPLR § 203, is more forgiving than Rule 15(c)(1)(C), Fed. R. Civ. P.  However, the case Plaintiff cites for this proposition, *Beck v. Consolidated Rail Corp.*, 394 F. Supp. 2d 632, 640 (S.D.N.Y. 2005), is inapposite because it concerns a Plaintiff who sued the wrong corporation after receiving incorrect information from a town clerk.  The Plaintiff in *Beck* made a true mistake, which would have allowed relation back under either federal or state law.  In contrast, Plaintiff here was simply ignorant of the defendants' identities and therefore not within the purview of either Rule 15(c)(1)(C) or CPLR § 203.  *See Bender v. City of New York*, No. 14 Civ. 4386, 2015 WL 524283, at *6 (S.D.N.Y. Feb. 10, 2015) ("Because Bender cannot satisfy Rule 15(c)(1)(C)'s "mistake" element, she cannot satisfy § 203(c) either."); *Vasconcellos v. City of New York*, No. 12 Civ. 8445, 2014 WL 4961441, at *8 (explaining that the mistake requirement of CPLR § 203 "closely tracks the federal relation-back requirement of Rule 15(c)(1)(C).  As [Plaintiff] does not satisfy Rule 15(c)(1)(C); she thus fails to satisfy the state's corollary to that rule, as well.").  Accordingly, Plaintiff's statute of limitation arguments fail, and all claims against Defendants Lujan and Zampella are dismissed as time barred.[2]

### B.   *Monell* Claim

The claims against the City are dismissed under the *Monell* doctrine.  A municipality can

---

[2] Although Plaintiff describes facts that imply a possible excessive force claim -- namely the desk sergeant kicking and stomping on his midsection on November 6, 2010 -- any such claim is time barred.  The same three-year statute of limitations applies to this § 1983 claim, and the desk sergeant has never been named as a defendant.

be held liable under § 1983 only if a plaintiff's injury is the result of municipal policy, custom or practice. *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). It is "not vicariously liable under § 1983 for [its] employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* at 61. The "mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)). Plaintiff has not submitted any evidence that his arrest and prosecution were the result of a custom or policy. Consequently, the summary judgment motion is granted as to the City, and the claims against it are dismissed.

### C. False Arrest Claims

The Fourth Amendment "includes the right to be free from arrest absent probable cause." *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 139 (2d Cir. 2010) (internal quotation marks omitted); *see* U.S. CONST. amend. IV. "'In analyzing § 1983 claims for unconstitutional false arrest, [courts generally look] to the law of the state in which the arrest occurred.'" *Jaegly v. Couch*, 439 F.3d 149, 151-52 (2d Cir. 2006) (quoting *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004)). In order to state a claim for false arrest under New York law, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified. *See Posr v. Doherty*, 944 F.2d 91, 97 (2d Cir. 1991) (citing *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)). Under both New York and federal law, "the existence of

11

probable cause is an absolute defense to a false arrest claim." *Jaegly,* 439 F.3d at 152.

"'Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Torraco*, 615 F.3d at 139 (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)). "The inquiry is limited to whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (internal quotation marks omitted). In the context of false arrest claims, courts look to the totality of the circumstances and "must consider those facts available to the officer at the time of the arrest and immediately before it, as probable cause does not require absolute certainty." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (emphasis omitted) (citations and internal quotation marks omitted).

### 1. False Arrest Claim for the November 5, 2010 Arrest

Summary judgment is granted on the November 5 false arrest claim as no reasonable jury could find, based on the evidence in the record, that Defendants lacked probable cause to arrest Plaintiff on that date.

Defendant Ferreira asserts that he arrested Plaintiff based on (1) his personal observation of Plaintiff chasing someone and swinging a stick; (2) that person's statement that Plaintiff and others had tried to rob him, and that Plaintiff ran towards him swinging a stick; (3) the recovery of the stick, which was a broken mop with metal tip. Plaintiff does not dispute that he was chasing someone with a stick and intended to hit him; during his post-arrest interview he explicitly admitted doing so. In his January 2015 deposition, Plaintiff said several times that he

did not recall particulars of the November 2010 incidents at issue, but that what he had said in his post-arrest interview was truthful, including his wielding a stick.  Defendant Ferreira therefore had probable cause to arrest Plaintiff for at least two of the three charges on which he was arrested -- Attempted Assault with Intent to Cause Physical Injury pursuant to N.Y.P.L. § 120.00(01) and Menacing in the Third Degree pursuant to N.Y.P.L. § 120.15.[3]  This is sufficient to preclude Plaintiff's false arrest claim.  *See Simpson v. City of New York*, 793 F.3d 259, 267 (2d Cir. 2015) ("This Court has long held that an arresting officer need not have probable cause 'with respect to each individual charge' . . . ." (quoting *Jaegly*, 439 F.3d at 154 (2d Cir. 2006) ("Stated differently, when faced with a claim for false arrest, we focus on the validity of the *arrest,* and not on the validity of each charge."))).

Plaintiff argues that he was arrested when he was handcuffed and placed in the police van, and not later when the police formally arrested him after obtaining an identification from the victim, and that Defendants lacked probable cause when Plaintiff was first restrained.  This argument is unavailing.  The undisputed evidence is that Ferreira saw Plaintiff chasing and swinging a stick at someone before Defendants restrained Plaintiff.  That observation is sufficient

---

[3] "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." N.Y.P.L. § 110.00 (McKinney).  "A person is guilty of assault in the third degree when . . . [w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person." *Id*. § 120.00(01).  "A person is guilty of menacing in the third degree when, by physical menace, he or she intentionally places or attempts to place another person in fear of death, imminent serious physical injury or physical injury." *Id.* § 120.15.

to create probable cause for the attempted assault and menacing charges.  Summary judgment is granted on the false arrest claim arising from the November 5, 2010, arrest.

### 2.  False Arrest Claim for the November 6, 2010 Arrest

Plaintiff raises no genuine issue of material fact as to probable cause for his arrest on November 6, 2010, for assault with intent to cause physical injury based on the events in the holding cell.  Defendant Ferreira stated in the arrest report, made out at the time of the incident, and repeated in his affidavit that Plaintiff's cellmate told Ferreira that Plaintiff had punched him several times, injuring his mouth and eye.  Ferreira then arrested Plaintiff for assault with intent to cause physical injury.  Nothing in the record suggests that the conversation between the cellmate and Ferreira did not occur, that Ferreira misconstrued or misremembered it, or that Ferreira had reason to disbelieve Plaintiff's cellmate.  Consequently, information from the victim is sufficient to establish probable cause for Plaintiff's November 6 arrest.  *See Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) ("[P]robable cause exists if a law enforcement officer 'received information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity.'") (citing *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)).

Plaintiff argues that "he never struck alleged victim and in fact was the one assaulted" and that he cannot be charged if he was defending himself and lacked intent to cause physical injury.  These arguments are misplaced.  Whether Plaintiff hit or otherwise injured his cellmate (including from their wrestling, which Plaintiff admitted to in his deposition), is not the issue on a false arrest claim, nor is Plaintiff's actual state of mind if he did injure his cellmate.  The issue is whether Ferreira reasonably believed that Plaintiff committed the crime of assault in the third

14

degree. Ferreira knew that there was an altercation between Plaintiff and his cellmate, that Plaintiff had no visible injuries, and was told that his cellmate had suffered injuries to his mouth and to his eye. Based on the record taken as a whole, no reasonable jury could find that Defendant Ferreira lacked probable cause for the November 6 arrest. Defendants' motion for summary judgment on this claim is granted.

### D. Malicious Prosecution Claim

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (citations omitted). "'The existence of probable cause is a complete defense to a claim of malicious prosecution in New York.'" *Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010) (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)). In addition, Plaintiff has not submitted any evidence to satisfy the fourth element of malicious prosecution, which requires a showing that "the proceeding was instituted with malice." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997). Defendant's motion for summary judgment on the malicious prosecution claim is granted.

### E. Qualified Immunity

Plaintiff does not assert facts sufficient to support a finding that the Defendants violated any of Plaintiff's constitutional rights. "A defendant is entitled to qualified immunity if he can establish (1) that the complaint fails to plausibly plead that the defendant personally violated the plaintiff's constitutional rights, or (2) that the right was not clearly established at the time in question." *Turkmen v. Hasty*, 789 F.3d 218, 246 (2d Cir. 2015). Here, Ferreira had probable

cause to arrest Plaintiff on both November 5 and 6, 2010, so he did not violate Plaintiff's constitutional rights. Consequently, Defendants have no need for a qualified immunity defense.

## IV. CONCLUSION

For the reasons discussed above, Defendant's motion is GRANTED. The Clerk of Court is directed to close the motion at Docket No. 59, close the case and mail a copy of this Order to the pro se Plaintiff.

SO ORDERED.

Dated: February 3, 2016
       New York, New York

                                            **LORNA G. SCHOFIELD**
                                         **UNITED STATES DISTRICT JUDGE**